IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 22-250-1 |
| | : | |
| ALI CHANDLER | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                         **May 7, 2026**

On April 15, 2026, this Court sentenced Defendant Ali Chandler to 210 months of imprisonment on one count of conspiracy to commit robbery which interferes with interstate commerce  and two counts of committing or threatening physical violence in furtherance of a plan or purpose to interfere with interstate commerce by robbery.  At the sentencing hearing, the Court overruled Chandler's objection to the Presentence Investigation Report's (PSIR) application of a two-level "organizer" enhancement under U.S.S.G. § 3B1.1(c) and addressed the sentencing factors set forth in 18 U.S.C. § 3553.  On April 20, 2026, Chandler filed a notice of appeal of this Court's sentence.  The Court now issues this written memorandum to further explain its sentence pursuant to Third Circuit Local Appellate Rule 3.1.[1]

**BACKGROUND[2]**

On November 13, 2021, Defendants Ali Chandler and Abdullah Hartage, along with two other co-conspirators, met at Koban Beverage, an alcohol store, and waited there until the two owners of the store left the premises with their daughter.  PSIR ¶¶ 13, 15.  The group then drove

---

[1]      Third Circuit Local Appellate Rule 3.1 states: "No later than 30 days after the docketing of a notice of appeal, the trial judge may file and transmit  to the parties a written opinion or a written amplification of a prior written or oral recorded ruling or opinion."

[2]      The background facts are taken from Chandler's PSIR prepared on April 14, 2025 and revised on May 13, 2025.  The facts are not disputed by the parties.

to the store owners' home and waited again. *Id.* After the store owners entered the residence, the group stormed into the house, pointed firearms at the residents, struck them with firearms, threatened their lives, and took their keys and a backpack containing several credit and debit cards. *Id.* ¶ 16. The group then fled after tripping a home alarm and later used the stolen credit cards to make purchases. *Id.* ¶ 17.

In the weeks after this robbery, Chandler and Hartage targeted and surveilled Crazy Wave, a cosmetic and beauty supply store. *Id.* ¶¶ 13, 19. They followed a specific store employee, learning her routine and where she lived. *Id.* ¶¶ 19, 28-29. Chandler and Hartage then planned to rob the employee at her house. *Id.* ¶¶ 19-22, 28-29.

On December 4, 2021, Chandler and Hartage waited at Crazy Wave for the employee to go home. *Id.* ¶ 23. They and two other co-conspirators then traveled to the employee's house. *Id.* After the employee returned home, the group forced their way into the house, pointed weapons at the employee, tied her up, threatened her, and beat her in the face with a firearm. *Id.* ¶ 24. The group then ransacked the home, taking a safe containing $60,000 in addition to old coins, currency, and jewelry from the master bedroom. *Id.* The victim was left beaten, bound, and bloodied on the ground until her husband arrived home. *Id.* She was hospitalized for three days. *Id.* ¶ 38.

After an investigation, on August 8, 2022, Chandler and Hartage were charged by indictment with one count of conspiracy to commit robbery which interferes with interstate commerce and two counts of committing or threatening physical violence in furtherance of a plan or purpose to interfere with interstate commerce by robbery. Dkt. No. 1. On October 11, 2022, a grand jury returned a superseding indictment, charging both defendants with firearm offenses in addition to the robbery counts. Dkt. No. 18.

On October 28, 2024, Defendant Ali Chandler pleaded guilty pursuant to a written plea agreement to one count of conspiracy to commit robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951 (Count One), and two counts of committing or threatening physical violence in furtherance of a plan or purpose to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Counts Two and Four).[3]  Dkt. No. 52. The parties agreed to dismiss the two firearm counts, charging Chandler with using, carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  PSIR ¶ 5.  On October 29, 2024, Hartage pled guilty to the same counts.  Dkt. No. 53.

The PSIR calculated Chandler's sentencing guideline range as follows.  As to the robbery of the Koban Beverage employees (Counts One and Two), the PSIR found the Guidelines set the base offense level at 20.  PSIR ¶ 44.  Six levels were added pursuant to U.S.S.G. § 2B3.1(b)(2)(B) because a firearm was used.  *Id.* ¶ 45.  Pursuant to U.S.S.G. § 2B3.1(b)(3)(A), two levels were added because the victims sustained bodily injury.  *Id.* ¶ 46.  Pursuant to U.S.S.G. § 2B3.1(b)(4)(A), four levels were added because a person was abducted to facilitate the commission of the offense.  *Id.* ¶ 47.  The PSIR thus calculated the adjusted offense level for this robbery as 32.  *Id.* ¶ 51.

As to the robbery of the Crazy Wave employee (Counts One and Four), the PSIR found the Guidelines set the base offense level at 20.  *Id.* ¶ 52.  Six levels were added pursuant to U.S.S.G. § 2B3.1(b)(2)(B) because a firearm was used.  *Id.* ¶ 53.  Pursuant to U.S.S.G. § 2B3.1(b)(3)(B), four levels were added because the victim sustained serious bodily injury.  *Id.* ¶ 54.  Two levels

---

[3]    The statutory maximum term of imprisonment for all three offenses is 20 years per count. The statutory maximum fine is $250,000 per count.  The statutory maximum term of supervised release is 3 years per count.

were added pursuant to U.S.S.G. § 2B3.1(b)(4)(B) because the victim was physically restrained to facilitate the commission of the offense.  *Id.* ¶ 55.  One level was added pursuant to U.S.S.G. § 2B3.1(b)(7)(B) because the loss was more than $20,000.00 but not more than $95,000.00.  *Id.* ¶ 56.  Given Chandler's role as an organizer of the robbery, two levels were added pursuant to U.S.S.G. § 3B1.1(c).  *Id.* ¶ 58.  The result was an adjusted offense level of 35.  *Id.* ¶ 60.

The greater of the two adjusted offense levels is 35.  *Id.* ¶ 62.  Thus, to determine Chandler's combined offense level, the PSIR increased that offense level by two levels in accordance with the table at U.S.S.G. § 3D1.4, for a total of 37.  *Id.* ¶¶ 61, 63.  The offense level was decreased by two levels pursuant to U.S.S.G. § 3E1.1(a) because the defendant clearly demonstrated acceptance of responsibility for the offenses.  *Id.* ¶ 66.  The offense was decreased by another level pursuant to U.S.S.G. § 3E1.1(b) because the defendant assisted authorities in the investigation or prosecution of his own misconduct.  *Id.* ¶ 67.  The result was a total offense level of 34.  *Id.* ¶ 68.  The PSIR assessed Chandler with six criminal history points, placing him in criminal history category III.[4] *Id.* ¶¶ 70-77.  With an offense level of 34 and criminal history category of III, Chandler's guideline range was 188 to 235 months.[5]  *Id.* ¶ 123.

The Government recommended "a sentence at the very top of the applicable guideline range" as calculated in the PSIR.  Dkt. No. 87 at 22.  Chandler objected to the organizer

---

[4]    Chandler was assessed three criminal history points each for a 2014 grand larceny and a 2020 unauthorized use of a motor vehicle conviction.  PSIR ¶¶ 72-75.  Chandler also had a 2014 conviction for attempted 2nd-degree burglary, but this conviction was not assessed any points because he committed the act prior to age 18 and over five years before the instant offense and was not sentenced to imprisonment.  *Id.* ¶ 70 & n.13; *see also* U.S.S.G. § 4A1.2(d).

[5]    As discussed below, Chandler objected to the application of a two-level enhancement for being an organizer of the Crazy Wave robbery.  If Chandler's objection had been sustained, the adjusted offense level would have been 32 and the corresponding guideline range would have been 151 to 188 months.

enhancement under U.S.S.G. § 3B1.1(c).[6]   Dkt. No. 86 at 1-3.   He also sought a sentence with a "modest downward variance" from the guideline range.   *Id.* at 3.   At sentencing, the Court overruled Chandler's objection to the organizer enhancement.   After considering the parties' arguments, the applicable guidelines range, and the 18 U.S.C. § 3553(a) factors, the Court did not grant a downward variance and sentenced Chandler to 210 months on each of Counts One, Two, and Four, with all such terms to be served concurrently.   Dkt. No. 95.

**DISCUSSION**

Chandler objected to paragraph 58 of the PSIR, which applies a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for Chandler's role as an organizer of the offense.  He argued that co-defendant Hartage was the leader of the criminal activity in that Hartage recruited him, planned and organized the home invasion and generally held a leadership role.  The Court overruled this objection and found Chandler was an organizer because he was significantly involved in the planning of the offense.

The Government "bears the burden of proving by a preponderance of the evidence that [a] sentencing enhancement applies." *United States v. Payo*, 135 F.4th 99, 106 (3d Cir. 2025) (quoting *United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014)).  The Guidelines provide for a two-level increase in a base offense level if the defendant "was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). "Organizers 'g[ive] functional structure to a coordinated . . . scheme[.]'" *United States v. Rodriguez*, 40 F.4th 117, 121 (3d Cir. 2022) (first alteration in original) (quoting *United States v. Adair*, 38 F.4th 341, 352 (3d Cir. 2022)). "[T]o be considered an organizer or leader, the defendant must have exercised some degree of

---

[6]     The parties do not object to any other aspect of the PSIR.

control over others in the commission of the offense." *United States v. Huynh*, 884 F.3d 160, 170 (3d Cir. 2018) (quoting *United States v. Helbling*, 209 F.3d 226, 243 (3d Cir. 2000)). The commentary to § 3B1.1 lists factors for sentencing courts to consider in determining whether a defendant qualifies as an organizer, including:

> the exercise of decision-making authority, *the nature of participation in the commission of the offense*, the recruitment of accomplices, *the claimed right to a larger share of the fruits of the crime*, *the degree of participation in planning or organizing the offense*, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* cmt. n.4 (emphasis added). The commentary also recognizes "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal conspiracy." *Id.* In deciding whether to apply an enhancement, "sentencing courts may draw reasonable inferences from the factual record before them." *United States v. Poulson*, 871 F.3d 261, 269 (3d Cir. 2017) (citing *United States v. Cicirello*, 301 F.3d 135, 141 (3d Cir. 2002)).

Chandler was an organizer of the Crazy Wave robbery within the meaning of § 3B1.1. He gathered information regarding Crazy Wave and its employee by following the employee and documenting where she lived. PSIR ¶¶ 19-20. This information was used in selecting the business and victim as a target and to direct co-conspirators to that location. *Id.*; *see also* Dkt. No. 87 at 9-10 (depicting a text attachment photo sent from Chandler's phone that highlights the victim's home in bright red arrows). Chandler later strategized with Hartage on how to avoid activating alarms in this robbery. PSIR ¶ 21. After consulting with Hartage, Chandler also acquired zip ties which were distributed to the other co-conspirators and used to tie up the Crazy Wave employee. *Id.* ¶¶ 22, 24.

After the robbery, Chandler researched how to open the safe stolen from the Crazy Wave employee which was successfully opened later. *Id.* ¶ 25; Dkt. No. 87 at 6 (depicting an image of the safe and Chandler holding stacks of cash). Again, the Court can infer this information was

6

used to open the safe.  Chandler, along with Hartage, also paid himself $1,000.00 more than the other two co-conspirators, "claim[ing] . . . a larger share of the fruits of the crime."  U.S.S.G. §3B1.1(c) cmt. n.4; PSIR ¶ 26.  Chandler's larger share indicates he played a larger role in the robbery than the other co-conspirators.  All these actions indicate Chandler played a vital role in planning and organizing the offense, asserting control over the two other co-conspirators.  While Hartage may have taken more of a leadership role, Chandler acted, at minimum, as a second-in-command to organize and execute the Crazy Wave robbery.  The Court therefore found the organizer enhancement appropriate and overruled Chandler's objection.

The Court next turned to the sentencing factors set forth in 18 U.S.C. § 3553(a)(2) to fashion "a sentence sufficient, but not greater than necessary."  The § 3553(a)(2) factors are: "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense"; the need for the sentence "to afford adequate deterrence to criminal conduct" by others; the need for the sentence "to protect the public from further crimes by the defendant"; the need for the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment"; "the kinds of sentences available"; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and the "need to provide restitution to any victims of the offense."

Regarding the nature and circumstances of the offense, Chandler participated in two violent home invasion robberies of Asian small business owners and employees.  PSIR ¶¶ 13-32; Dkt. No. 86 at 3.  He inflicted significant physical, financial, and emotional damage on the victims.  His co-conspirators struck the victims with a firearm, causing one of them to be hospitalized for three

days.  PSIR ¶¶ 16, 38.  This victim thought she might die as a result.  *Id.* ¶ 38.  Another victim was forced at gunpoint to helplessly watch as her parents were beaten.  *Id.* at 33.  During one of the robberies, Chandler stole over $60,000 representing that victim's entire savings.  *Id.* ¶¶ 24, 38.  All the victims suffer from anxiety, paranoia, and trauma because of Chandler's conduct.  *Id.* ¶¶ 33-38.  The nature and circumstances of these offenses favor a lengthy sentence.

The Court also considered Chandler's history and characteristics in imposing this sentence. Chandler was 25 years old at the time of the offenses.  *Id.* ¶ 139.  He has a history of significant mental health and substance abuse issues.  For most of his life, he was exposed to violence and tragedy, losing multiple friends and family members to gun violence.  *Id.* ¶ 88. These losses reportedly have led him to thoughts of suicide.  *Id.* ¶ 100.  He also reports being the victim of sexual assault as a child.  *Id.* ¶ 88.  Chandler additionally suffers from drug and alcohol abuse.  He began experimenting with alcohol and drugs such as marijuana, Xanax, and Percocet as a middle school student.  *Id.* ¶¶ 103-105, 107.  In high school, his drug use escalated to heroin, cocaine, and psychedelic mushrooms.  *Id.* ¶ 105.  Leading up to his instant arrest, he was taking Percocet pills and drinking approximately three shots of liquor per day.  *Id.* ¶¶ 105, 107.  Chandler's untreated mental health and substance abuse were likely significant factors in his criminal conduct.  Dkt. No. 86-2 at 12.

Based on the letters submitted to the Court, the testimony of Chandler's stepfather, and attendance of various family members at the sentencing hearing, it is clear Chandler enjoys significant support from his family and community.  *See generally* Dkt. Nos. 86-3 & 86-4.  The Court also took into account Chandler's previous work history in addition to his own statements apologizing for his conduct and pledging to better himself as a person and a father.  *See also* PSIR ¶¶ 110, 113-117.  Chandler's history and characteristics favor a lighter sentence.

The Court next contemplated the need for the sentence to reflect the offenses' seriousness, to promote respect for the law, provide just punishment for the offenses, and deter criminal conduct by others. Again, given the serious nature of the offenses, a significant sentence should be imposed. The need for the sentence to protect the public from further crimes by the defendant also leans towards a more serious sentence because Chandler had previously been found guilty of various theft-related offenses. *See id.* ¶¶ 70-75.

The Court further considered the need for the sentence to provide Chandler with educational or vocational training, medical care, or other correctional treatment particularly in light of his aforementioned mental health and drug abuse issues. Indeed, the psychological assessment of Chandler indicates he would benefit from mental health and substance abuse treatment, Dkt. No. 86-2 at 11-12, all of which can be provided to him in custody and on supervised release.

The Court also considered the kinds of sentences available. The Court has the authority to select any reasonable sentence. *See United States v. Ausburn*, 502 F.3d 313, 327 (3d Cir. 2007). "Sentences within the applicable guideline range are entitled to a presumption of reasonableness." *United States v. Simmons*, 69 F.4th 91, 95-96 (3d Cir. 2023). The applicable guideline range suggests a sentence between 188 and 235 months.

The Court finally reviewed the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. In particular, the Court sentenced Abdullah Hartage, Chandler's co-defendant, to 216 months and found Chandler is similar in culpability and prior record.[7]

---

[7] The sentence imposed on Hartage is six months longer than Chandler's sentence due to the more serious nature of Hartage's criminal history.

After balancing all these factors, the Court declined to grant a downward variance and instead sentenced Chandler to 210 months of imprisonment, which is in the middle of the applicable guideline range. While Chandler's offense was serious and had grave impacts on his victims, his struggles with substance abuse, exposure to trauma, and his community ties provided some mitigating circumstances. Thus, this sentence is sufficient, but not greater than necessary to achieve the factors in § 3553(a)(2).

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.